UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**MARK LYNN JEFFREY,**

        **Plaintiff,**

v.                                    **CIVIL ACTION 2:15-cv-15226**

**NANCY A. BERRYHILL,**
**Acting Commisoner of Social Security,**

        **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is a complaint filed on November 16, 2015, by Mark Lynn Jeffrey, Claimant (ECF No. 2). On March 2, 2016, Defendant filed an Answer to the Complaint[1] (ECF No. 9). Plaintiff did not file a Motion in Support of Judgement on the Pleadings and Defendant did not file a Brief in Support of the Defendant's Decision; therefore, the Proposed Findings and Recommendation will be made on the merits of the case.

On August 30, 2007, Claimant filed a Title II application for disability and disability insurance benefits (DIB) alleging disability beginning September 1, 2002[2]. The Claim was denied initially on April 3, 2008, and again upon reconsideration on June 2, 2008. On June 18, 2008, Claimant filed a written request for a hearing before an Administrative Law Judge (ALJ). On September 22, 2009, ALJ Steven A. De Monbreum held a video hearing. Claimant appeared in Bluefield, West Virginia and the ALJ presided over the hearing from Roanoke, Virginia. On

---

[1] On February 1, 2016, Defendant filed a Motion seeking to extend time to file Answer to Claimant's complaint to March 3, 2016 (ECF No. 7). The undersigned granted Defendant's motion on February 2, 2016 (ECF No. 8).
[2] At the September 22, 2009, hearing, Claimant amended his alleged onset date from September 1, 2002, to May 25, 2007.

November 4, 2009, ALJ De Monbreum denied Claimant's application for disability. On November 9, 2009, Claimant filed a request for review by the Appeals Council (AC) (Tr. at 6). On August 17, 2010, the AC denied Claimant's request for review. The AC stated "We found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). On October 4, 2010, Claimant filed a complaint before the District Court.

On February 22, 2012, District Judge Irene C. Berger vacated the Commissioner's decision and remanded the matter for further proceedings (Tr. at 524). Judge Berger held that the ALJ failed to consider the consultative examination report and Medical Source Statement of Ability to Do Work-Related Activities (Physical) from Bruce Davis, M.D., dated April 4, 2007. Consequently, the ALJ did not weight the opinion of Dr. Davis or provide any of the limitations from the report in the hypothetical given to the Vocation Expert (VE) at the hearing.

On March 12, 2014, a hearing was held by ALJ Anthony Johnson, Jr., via telephone because Claimant was incarcerated. The ALJ presided over the hearing from Richmond, Virginia. On May 22, 2014, the ALJ declined Claimant's application for DIB. Claimant asked the AC to review the ALJ's decision. On September 11, 2015, the AC notified Claimant that his request for review was denied. The AC stated "We found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 445-446). On November 6, 2015, Claimant filed a complaint before the District Court (ECF No. 2).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs

3

and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s),

the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of May 25, 2007 (Tr. at 459). The ALJ found that Claimant meets the insured status requirements of the Social Security

Act through December 31, 2007. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, diabetes mellitus, arthritis, depression, hyperlipidemia and peripheral neurology. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 460). The ALJ then found that Claimant has a residual functional capacity to perform light work[3] (Tr. at 461). As a result, the ALJ concluded that Claimant could perform relevant work as a mail sorter, garment folder and information clerk (Tr. at 465). On this basis, benefits were denied. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

---

[3]Claimant is able to stand and/or walk up to one hour continuously and four hours in an eight-hour workday in total; sit two hours continuously and up to eight or more hours in an eight-hour workday in total; occasionally operate foot controls bilaterally; frequently but not constantly able to handle, finger, feel, reach, push and pull bilaterally; able to occasionally stoop, kneel and crouch but never crawl; occasionally able to tolerate exposure to hazards such as unprotected heights or moving machinery; able to occasionally tolerate exposure to extreme heat, cold or vibrations; and able to use common sense understanding to perform instructions provided in oral, written or diagrammatic form consistent with a range of unskilled work at or below reasoning level 3 as those terms are defined in the Dictionary of Occupational Titles (Tr. at 461).

the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on June 10, 1956. He is presently incarcerated at Mt. Olive Correctional Center. His projected release date is July 24, 2034 (ECF No. 2). Claimant has a high school education.

### The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

### Claimant's Challenges to the Commissioner's Decision

Plaintiff did not file a Motion in Support of Judgement on the Pleadings and Defendant did not file a Brief in Support of the Defendant's Decision in this matter to this Court.

### Treating Physicians

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2014). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2014). The opinion of a treating physician must be weighed against the record as

a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

## Discussion

The ALJ's decision reflected that the evidence failed to establish an impairment meeting Listing-level severity (Tr. at 457-465). The ALJ held that Claimant's diabetes mellitus and neuropathy did not meet or equal the requirements of any listing (Tr. at 460). The ALJ stated that Claimant "has a history of poorly controlled diabetes with peripheral neuropathy. (Id.) However, Claimant did not comply with treatment and medications. The ALJ held that "there was no evidence of severe motor dysfunction, frequent acidosis, amputation or retinopathy." Additionally, the ALJ found that Claimant's osteoarthritis did not meet or medically equal any listing section of Appendix 1. There was no objective evidence of any joint deformities or

abnormalities.

The ALJ found that the severity of Claimant's mental impairment did not meet or medically equal the criteria of Listing 12.04. Claimant's mental impairment did not result in at least two of the "paragraph B" criteria being "marked." The ALJ found that Claimant's activities of daily living and social functioning were mildly restricted (Tr. at 460). Claimant's concentration, persistence or pace had moderate difficulties. Claimant had no episodes of decompensation, which have been for extended duration.

The ALJ explained that Claimant's treatment records do not reflect the level of pain and neuropathy alleged by Claimant (Tr. at 462). Additionally, the ALJ held that the treatment records do not reflect any other symptoms of severity or frequency that would prevent Claimant from performing unskilled light work. The ALJ discussed Claimant's physical and neurological exams being within normal limits. As well as, Claimant's treatment record for diabetes and peripheral neuropathy do not reflect any severe problems or end organ damage.

As for opinion evidence, the ALJ discussed the consultative medical evaluation performed by Dr. Bruce Davis on April 4, 2007 (Tr. at 463). The physical and neurological examinations were generally within normal limits. On February 9, 2008, psychologist Teresa Jarrell conducted a consultative psychological evaluation. (*Id.*) Claimant was diagnosed with a recurrent major depressive disorder. However, Ms. Jarrell reported that Claimant was able to perform daily activities and that his overall social functioning was within normal limitations. The ALJ gave significant weight to the opinions of Dr. Davis and Ms. Jarrell. (*Id.*)

On November 17, 2008, psychiatrist Dr. Ahmed Faheem completed a mental functional assessment report. Dr. Faheem reported that Claimant has "poor" functional abilities in several functioning categories such as following work rules, relating to co-workers, interacting with

9

supervisor(s), dealing with work stresses and maintaining attention/concentration (Tr. at 321). Dr. Faheem found Claimant to have poor performance in understanding, remembering and carrying out complex job instructions (Tr. at 322). The ALJ gave Dr. Faheem's opinion slight weight. The ALJ stated that Dr. Faheem's report was based upon 3 appointments. The ALJ noted that "Each of Dr. Faheem's treatment notes reported that the claimant was doing okay with no mention of severe psychiatric symptoms" (Tr. at 463).

The ALJ held that after careful consideration of the evidence, the undersigned finds that Claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the ALJ held that Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible (Tr. at 462).

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr.. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to pro so Plaintiff via United States Mail as follows:

>   Mark Lynn Jeffrey
>   #3507947
>   Mount Olive Correctional Complex
>   One Mountainside Way
>   Mt. Olive, WV 25185

Enter: February 24, 2017

Dwane L. Tinsley
United States Magistrate Judge