UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARK LYNN JEFFREY,

       Plaintiff,

v.                                    Civil Action No. 15-15226

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

       Pending is the objection filed on February 8, 2017, by plaintiff Mark Lynn Jeffrey to the magistrate judge's Proposed Findings and Recommendation ("PF&R").[1]

I.  <u>Procedural History</u>

       On November 16, 2015, plaintiff, proceeding pro se, instituted this civil action pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the Commissioner's administrative decision denying plaintiff's application for disability insurance benefits and supplemental security income.

---

[1] While Carolyn W. Colvin was the Acting Commissioner of Social Security as of the date of the objections to the PF&R, Nancy Berryhill became the Acting Commissioner on January 23, 2017.

It is noted that plaintiff first filed for social security benefits on August 30, 2007.  His claim was denied by the Administrative Law Judge on November 4, 2009.  Tr. at 6. After the appeals council denied his request for review, plaintiff's counsel filed a complaint in district court.  On February 22, 2012, Judge Irene C. Berger vacated the Commissioner's decision and remanded the matter for further proceedings because the ALJ did not consider the consultative examination report of Dr. Bruce Davis.  Id. at 524.  Plaintiff thereafter became incarcerated and as a result, his attorney withdrew as his council.  Id. at 568.  After the ALJ again determined he was not disabled, plaintiff, who remains incarcerated, instituted this civil action.

This action was referred to United States Magistrate Judge Dwane L. Tinsley for consideration, pursuant to 28 U.S.C. § 636(b)(1)(B) and standing order in this district.  The magistrate judge filed his PF&R on February 24, 2017.  In that document, the magistrate judge recommends that the Commissioner's final decision be affirmed and that this action be dismissed from the docket of the court.  See PF&R at 10.  As noted, plaintiff timely filed objections to the PF&R.  The Commissioner has not responded to plaintiff's objections.

2

Plaintiff has five objections to the PF&R.  First, plaintiff states that there is not substantial evidence in the record as to "his current health and physical condition."  See Plaintiff's Objections to PF&R ("Obj.") at 3-4.  Second, plaintiff objects to the ALJ's step three determination respecting Listed impairments.  Id. at 4.  Third, plaintiff says that "it is not apparent" that the ALJ considered his past relevant work and determined whether or not he could perform his past work despite his impairments.  Id. at 4-5.  Fourth, plaintiff argues that because he turned 55 on June 10, 2011, he is in the "advanced age" category for social security purposes. Id. at 6.  Finally, plaintiff states that the PF&R does not indicate that the ALJ "alerted plaintiff to the availability of representation through Legal Services and Legal Aid Program." Id.

## II.  Standard of Review

The court reviews de novo those portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(B); see Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also 20 C.F.R. § 416.927(e)(1) (ultimate decision regarding disability determinations rests with the Commissioner).  On the other hand, the standard for review of the Commissioner's decision is rather deferential to the

3

Commissioner, for, "[u]nder the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974) (court must scrutinize the record as a whole to determine whether the conclusions reached are supported by substantial evidence); see also 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations and quotations omitted).

"In reviewing for substantial evidence, [a district court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal citations and quotations omitted). Substantial evidence is by definition more than "a mere scintilla," Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996), but "may be somewhat less than a preponderance," Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

### III.  <u>Discussion</u>

The Social Security regulations establish a "sequential evaluation" for the adjudication of disability claims.  <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).  The first question is whether the claimant is currently engaged in gainful employment.  <u>Id.</u> at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the second question is whether the claimant suffers from a severe impairment.  <u>Id.</u> at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If so, the third question is whether the claimant's impairment meets or equals any of the specific impairments listed in Appendix 1 to Subpart P of the regulations.  <u>Id.</u> at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments meet or equal a listing, he or she is considered disabled, and is awarded benefits.  <u>Id.</u>  If not, the inquiry continues on to whether the claimant's impairments prevent the performance of past relevant work.  <u>Id.</u> at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant satisfies this inquiry, the claimant establishes a prima facie case of disability, shifting the burden to the Commissioner for the fifth and final inquiry.  <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981); <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983).  The final inquiry is whether the claimant is able to perform other forms of substantial gainful activity

considering the claimant's impairments, age, education and prior work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the ALJ found at step one that plaintiff was not engaged in substantial employment.  Tr. at 459.  At step two, the ALJ found that plaintiff suffered from the following severe impairments: diabetes mellitus, obesity, arthritis, hyperlipidemia, peripheral neuropathy, and depression.  Id.  At step three, the ALJ found that plaintiff's impairments did not meet or equal any listed impairment.  Id. at 460-61.  At step four, the ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> [H]e was able to stand and/or walk up to one hour
> continuously and four hours in an eight-hour workday in
> total; sit two hours continuously and up to eight hours or
> more hours in an eight-hour workday; occasionally operate
> foot controls bilaterally; frequently but not constantly
> able to handle, finger, feel, reach, push, and pull
> bilaterally; able to occasionally stoop, kneel, and crouch
> but never crawl; occasionally able to tolerate exposure to
> hazards such as unprotected heights or moving machinery;
> able to occasionally tolerate exposure to extreme heat,
> cold, or vibrations; and able to use common sense
> understanding to perform instructions provided in oral,
> written, or diagrammatic form consistent with a range of
> unskilled work at or below reasoning level 3 as those terms
> are defined in the Dictionary of Occupational Titles.

Id. at 461.  The ALJ determined that plaintiff retained the above RFC at least in part because he found that plaintiff's

"medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  Id. at 462.

Finally, based on his assessment of plaintiff's RFC and the testimony of Ruth Fast, the vocational expert, the ALJ found, at steps four and five, that plaintiff was not capable of performing any past relevant work, but was capable of performing the requirements of representative occupations, such as a mail sorter, garment folder, and information clerk.  Id. at 465.  The ALJ concluded that plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  Id.  As a result, he determined that plaintiff was not disabled.  Id.

Because neither plaintiff nor the Commissioner filed any pleadings or motions in the case, the magistrate judge's PF&R was based on the record of the case.  After considering the evidence and the ALJ's decision, the magistrate judge recommends that the court affirm the final decision of the Commissioner and dismiss the matter from the docket of the court.  See PF&R at 10.

### A. Plaintiff's Current Condition

Plaintiff first argues that the decision of the ALJ is not supported by substantial evidence because of the lack of evidence in the record as to his current health and physical condition.  Obj. at 3.  Plaintiff asserts that he "should be given the opportunity to have a complete psychiatric evaluation, a recent medical evaluation, and current consultative psychological evaluation," id., which he says "would account for the deterioration of [his] health and physical condition since the consultative medical evaluation performed by Dr. Bruce Davis on April 4, 2007." Id. at 6.

According to the ALJ, plaintiff's earning record shows that he had "acquired sufficient quarters of coverage to remain insured through December 31, 2007." Tr. at 457.  Plaintiff must therefore must establish that he had a disability during the relevant time period of September 1, 2002, his alleged onset date of disability, through December 31, 2007, the date he last met the insured status requirement ("DLI") under Title II of the Social Security Act.  See 42 U.S.C. § 416.

Although post-DLI evidence may be considered and evaluated in determining whether plaintiff was disabled prior to the DLI, plaintiff has not explained how new consultative examinations will demonstrate that he was disabled prior to

December 31, 2007, arguing only that it will show his
impairments have worsened since his last examinations.  The ALJ
considered the evidence in the record pertaining to plaintiff's
impairments, including consultative evaluations from 2007 and
2008.  Tr. at 463.  The court thus finds plaintiff's first
objection is without merit.

### B. Step Three Determinations

Plaintiff next contends that the ALJ erred in
concluding that his impairments did not meet or medically equal
any listing at step three.  Obj. at 4.  Plaintiff does not point
to any evidence or listing that the ALJ should have but failed
to properly consider, and otherwise fails to explain his
objection to the ALJ's step three determination.

To obtain de novo review of a magistrate judge's
findings, the party objecting to the magistrate judge's
recommendation must file specific written objections, see Fed.
R. Civ. P. 72(b), and the district judge "shall make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."  28 U.S.C. § 636(b)(1)(C).  The objection must be made
"with sufficient specificity so as reasonably to alert the
district court of the true ground for the objection," and cannot
be merely a generalized objection.  U.S. v. Midgette, 478 F.3d

9

616, 621-22 (4th Cir. 2007).  "[W]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72.

Because plaintiff's objection to the ALJ's step three determination does not point to any specific error within the PF&R, the court will review the ALJ's step three determination for clear error.

With regards to plaintiff's diabetes mellitus and neuropathy, the ALJ considered Listing 9.08.  The ALJ found that "there was no evidence of severe motor dysfunction, frequent acidosis, amputation, or retinopathy.  The claimant was also noncompliant with treatment and medications."  Id. at 460 (internal citations omitted).  It appears that in analyzing plaintiff's diabetes mellitus, the ALJ used the old version of section 9.00, which, effective June 7, 2011, was revised to delete the individual endocrine listings, including listing 9.08.  See Revised Medical Criteria for Evaluating Endocrine Disorders, 76 FR 19692-01.  The revised criteria states that the revision is due to "significant advances in detecting endocrine disorders at earlier stages and newer treatments, [which] have resulted in better management of these conditions since we last published final rules making comprehensive revisions to the

10

endocrine listings in 1985. . . . Therefore, we have determined
that . . . we should no longer have listings in sections 9.00
and 109.00 based on endocrine disorders alone." Id. at 19692.

The old version of listing 9.08 under which the ALJ
analyzed plaintiff's impairments states

Diabetes mellitus.  With:

A. Neuropathy demonstrated by significant and persistent
   disorganization of motor function in two extremities
   resulting in sustained disturbance of gross and dexterous
   movements, or gait and station (see 11.00C); or
B. Acidosis occurring at least on the average of once every
   two months documented by appropriate blood chemical tests
   (pH or pCO2 or bicarbonate levels); or
C. Retinitis proliferans; evaluate the visual impairments
   under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

As the ALJ discussed, the evidence contained in the
record does not demonstrate that plaintiff had severe motor
dysfunction in two extremities, nor was there evidence of
acidosis or renopathy.  Tr. at 460.  Additionally, the record
does not demonstrate that plaintiff had visual impairments of
the type contemplated in listings 2.02, 2.03 or 2.04.

The amended version of listing 9.00 states that
"impairments that result from endocrine disorders [will be
evaluated] under the listing for other body systems." See
Revised Medical Criteria for Evaluating Endocrine Disorders, 76

11

FR 19692-01 at 19697.  For example, "[p]ituitary gland disorders can disrupt hormone production and normal functioning in other endocrine glands and in many body systems.  The effects of pituitary gland disorders vary depending on which hormones are involved. . . . [W]hen pituitary hypofunction affects water and electrolyte balance in the kidney and leads to diabetes insipidus, we evaluate the effects of recurrent dehydration under 6.00." Id.  Hence, the revised listing directs a claimant to show that his diabetes mellitus or other endocrine disorder caused him to meet or equal the criteria for a listing of another body system.

The Revised Medical Criteria for Evaluating Endocrine Disorders states that the revised listing is effective June 7, 2011, and further states "we will use these final rules on and after their effective date in any case in which we make a determination or decision.  We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.  If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." Id., n. 3.

Plaintiff first filed a Title II application for disability and disability insurance benefits on August 30, 2007. His claim was denied initially, on reconsideration, and after a hearing before an ALJ.  After the appeals council denied his request for review, plaintiff filed a complaint in district court.  As discussed, on February 22, 2012, District Judge Irene C. Berger vacated the Commissioner's decision and remanded the matter for further proceedings for the failure of the ALJ to consider the consultative examination report and Medical Source Statement from Bruce Davis, M.D.  Tr. at 524.

Because Judge Berger remanded the matter for further proceedings on February 22, 2012, after the effective date of the revised listing 9.00, pursuant to the SSR's rule, the ALJ should have applied the revised listing in considering plaintiff's impairments.

However, the revised listing 9.00 makes it more difficult to meet the listing requirements for an impairment of endocrine system such as diabetes mellitus, because it removes listing 9.08 and instead requires a claimant to show that the effects of his diabetes mellitus meets another listing.  Because the ALJ specifically discussed Listing 9.08 in reference to plaintiff's diabetes mellitus and neuropathy, and also stated that those impairments did not meet or equal the requirements of

13

listing 9.08 or any other listing section, any error in the
failure of the ALJ to consider the amended listing was harmless.[2]
Tr. at 460.

### C. Plaintiff's Prior Work History

Plaintiff's next objection is that "[i]t is not
apparent in the [PF&R] that [the ALJ] considered and evaluated
plaintiff's past relevant work or made any determination whether
'plaintiff can perform his past work despite his impairments.'"
Obj. at 4-5 (quoting Albright v. Comm'r of Soc. Sec. Admin, 174
F.3d 473 (4th Cir. 1999).  Plaintiff further states that the
ALJ's "assessment of prior work history is insufficient for this

---

[2] As noted, an ALJ or appeals council is instructed to apply an
amended listing to a plaintiff's impairments if its effective
date is prior to the ALJ or appeals council's determination.
When the effective date of an amended listing is after a
claimant files for disability benefits but before the appeals
council's decision, courts to consider the issue are split on
whether the application of the amended regulation to a
claimant's claims is impermissibly retroactive.  Compare, Cherry
v. Barnhart, 327 F. Supp. 2d 1347 N.D. Okla. 2004) (finding the
elimination of the presumption of disability for obesity to
pending social security applications to be impermissibly
retroactive) with Combs v. Comm'r of Soc. Sec., 459 F.3d 640
(6th Cir. 2006) (en banc) (finding the application of the same
amended regulation regarding obesity not to be impermissibly
retroactive).  Inasmuch as the court has determined that the ALJ
considered both the old listing 9.08 and also considered
plaintiff's endocrine related impairments under other listings,
which is the directive of the amended listing 9.00, plaintiff's
impairments do not meet the requirements of either the old or
amended listing.  Thus, the court need not decide whether the
regulation is impermissibly retroactive.

court to conduct a meaningful review, and, thus, remand is required."  Id. at 5.

Between the third and fourth steps of the disability determination process, the ALJ must determine a claimant's residual functional capacity, or RFC.  "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continued basis."  SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).  The RFC determines the most "an individual can do despite his or her limitations or restrictions.  Id.  To determine a claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Id. at *1.  The RFC is then used to determine, among other things, whether a claimant can perform past relevant work as it was actually performed.

Although plaintiff objects to the ALJ's failure to consider whether he could perform his past relevant work, the ALJ found, based on his RFC, that plaintiff "was unable to perform past relevant work . . . as an inspector/ packer and forklift operator [because] [t]hese jobs required more than light exertion and other job tasks precluded by the claimant's combined limitations."  Tr. at 464.  Because the ALJ determined

that plaintiff was unable to perform his past relevant work due
to his impairments, plaintiff's objection is without merit.

        To the extent that plaintiff additionally objects to
the RFC on the basis that the ALJ failed to correct the error
that formed the basis of Judge Berger's remand of the case to
the Commissioner in 2012, that objection is also without merit.
As noted, Judge Berger vacated the prior ALJ's decision and
remanded the case for the failure of that ALJ to consider the
consultative examination report and Medical Source Statement of
Ability to Do Work-Related Activities of Bruce Davis, M.D.,
dated April 4, 2007.  See PF&R at 2; Tr. at 524.  The ALJ in
this instance considered the consultative examination of Dr.
Davis, gave it significant weight and included the
recommendations of Dr. Davis in plaintiff's RFC.  Id. at 463;
Tr. at 215-223.

                    D. Plaintiff's Age

        Plaintiff also argues that because he turned 55 on
June 10, 2011, he is in the "advanced age" category for social
security purposes.  Obj. at 6.  He states that "given [his]
incarceration and projected release date of July 24, 2034, [he]
will not have an [sic] viable opportunity to secure substantial
gainful employment . . . until [he] is seventy-eight (78) years

                              16

old and presumptively collecting his social security benefits."
Id.

In determining whether an individual is disabled, a claimant's "chronological age in combination with [his RFC,] education, and work experience" is considered.  20 C.F.R. § 416.963(a).  The age categories are: (1) "younger person," who is someone under 50 years old; (2) "person closely approaching advanced age," who is an individual between 50 and 54; and (3) person of advanced age, who is an individual 55 or older.  Id. at §§ 416.963(c)-(e).  The ALJ must apply "each of the age categories that applies . . . during the period for which . . . [it must be] determine[d] if [a claimant] is disabled."  Id. at § 416.963(b).

In the present case, plaintiff was born on June 10, 1956.  Tr. at 464.  The evidence must demonstrate that plaintiff was disabled on or before his date last insured, December 31, 2007, in order to be eligible for benefits.  Plaintiff was 51 on December 31, 2007, putting him in the "closely approaching advanced age" category on this date.  Id.  Because plaintiff must establish he was disabled by December 31, 2007, it is not relevant to the RFC determination that he is now considered to be of "advanced age."  See 20 C.F.R. § 416.963(b).

### E. Plaintiff's Right to Representation

#### 1. Representation at the ALJ Hearing

In his objections, plaintiff contends that the PF&R "did not indicated [sic] that [the ALJ] alerted plaintiff to the availability of representation through Legal Services and Legal Aid Program," and requests that the court appoint him an attorney to represent him in future proceedings in this case. Obj. at 6-7.  Plaintiff's assertion that he was not notified of the potential availability of representation through legal services programs is unsupported by the record evidence.

Claimants have a statutory right to have an attorney or other representative present at a social security hearing. 42 U.S.C. § 406.  A claimant is not required to be represented by counsel during a Social Security proceeding, and "lack of representation by counsel is not by itself an indication that a hearing was not full and fair."  Sims v. Harris, 631 F.2d 26, 27-28 (4th Cir. 1980).  A remand based on a claimant's lack of counsel during Social Security proceedings is thus proper only "where the absence of counsel created clear prejudice or unfairness to the claimant."  Id. at 28.

Plaintiff was thoroughly advised of his right to representation by the ALJ.  On November 18, 2013, the ALJ began a telephonic hearing with plaintiff and notified plaintiff that

18

he was entitled to postpone the hearing in order to try to find
representation.  Id. at 475-76.  The ALJ also explained to
plaintiff that he could be represented by an attorney or non-
attorney and advised him of the potential availability of legal
aid organizations to represent him at no cost.  Id. at 482.  The
ALJ explained that he may be unable to obtain such free services
due to his incarceration, and explained contingency fee
arrangements.  Id.  Due to plaintiff's request to postpone the
hearing to try to find representation, the ALJ continued the
hearing for nearly four months until March 12, 2014.  Id.  At
the hearing on March 12, 2014, the following exchange occurred:

> ALJ: Do I understand correctly that you've not retained a
> representative, Mr. Jeffrey?
>
> Pl.: I'm unable to.  That's correct.
>
> ALJ: All right.  Now, do you want to proceed with your
> hearing representing yourself?
>
> Pl.: Well, I guess.  Is there—how long can this be
> postponed? Years or just months?
>
> ALJ: Well, I'd have to grant postponement.  You know,
> that's a  decision that I make.  At this point, I'd have to
> hear something awfully compelling to postpone it again.
>
> Pl.: Yeah.
>
> ALJ: We've had a postponement of several months for the
> purpose of obtaining representation.
>
> Pl.: Okay.
>
> ALJ: Now, are you going to be released eminently?
>
> Pl.: It'll be about 12 or 13 years.

ALJ: Yeah. So—

Pl.:  If I luck out it might be sooner.

ALJ: I don't think I would grant another postponement under those facts.

Pl.: Okay.

ALJ: So, you would have to go forward representing yourself, if that's what you want to do today.

Pl.: Well, I guess I have to.

ALJ: All righty.  I understand.

Tr. at 488-489.  The ALJ then continued with the hearing.  The ALJ followed the procedures set forth in the SSA's Hearings, Appeals, and Litigation Law Manuel ("HALLEX"),[3] which states:

> If the claimant asks to postpone the hearing to obtain a representative and it is the first request, the ALJ will typically grant the requested postponement. The ALJ will:
>
> • Go on the record and advise the claimant of the right to be represented;
>
> • Provide the claimant with information about organizations that provide free legal services;
>
> • Advise the claimant to notify the hearing office if representation is obtained;
>
> • Advise the claimant that the hearing will be postponed and rescheduled;
>
> • Advise the claimant that normally only one postponement is permitted to obtain representation, unless he or she can show good cause that requires an additional postponement;

---

[3] HALLEX is a "manual in which the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the office of Hearings and Appeals (OHA) staff." Roseberry v. Colvin, No. 3:15-CV-04895, 2016 WL 1737121, at 15 (S.D.W. Va. May 2, 2016)

• Advise the claimant that if he or she appears at the
rescheduled hearing without a representative, the hearing
will proceed with the unrepresented claimant unless he or
she shows good cause; and

• Obtain an "Acknowledgement of Postponement in Order to
Obtain Representative" from the claimant (see sample
provided in HALLEX I-2-6-97) with his or her witnessed
signature. The ALJ will mark the acknowledgement as an
exhibit and provide a copy of the acknowledgement to the
claimant.

HALLEX I-2-6-52(C), Postponement of the Hearing to Obtain

Representation.

Here, the ALJ advised plaintiff of his right to

representation, explained to plaintiff that legal aid

organizations may be available to represent him without cost and

discussed contingency fee arrangements with him.  The ALJ then

postponed the hearing for almost four months so that plaintiff

could obtain counsel.  Plaintiff was unable to articulate a

compelling reason for another postponement of the hearing.  It

appears from his question regarding the length of time the ALJ

could continue the hearing, that he wished to postpone the

proceedings until after he was released from jail in twelve

years.  See Tr. at 489.

Prior to the hearing, plaintiff was additionally sent

three copies of an informational sheet called "Your Right to

Representation" informing him of his right to an attorney or

other representative during his social security appeal and

providing a website and phone number where an individual can ask specific questions about the social security process.  See Tr. 577-578, 592-593, 609-610.  The sheet also notified plaintiff of the existence of organizations that "can help you find a representative or give you free legal services if you qualify" and that "Your Social Security office has a list of organizations that can help you find a representative."  Id. at 450.

     After the ALJ's determination that plaintiff was not disabled, plaintiff apparently wrote the appeals council on June 17, 2014, indicating that he needed assistance finding an attorney.  Id. at 448.  A representative of the appeals council wrote back to plaintiff on December 16, 2014, stating, "Although you have a right to be represented before the Social Security Administration, obtaining a representative is your responsibility."  Id.  The appeals council granted plaintiff a 30-day extension before plaintiff was required to explain why he disagreed with the ALJ's decision so that he could obtain an attorney.  Id.  Enclosed with the letter was another copy of the informational sheet "Your Right to Representation."  Id. at 450-451.  On January 22, 2015, plaintiff wrote back to the appeals council stating that he was unable to obtain representation, and asking for more time so that he could find representation when

he was released from prison.  Id. at 445.  A representative of the appeals council responded on September 11, 2015, stating, "Our rules do not permit us to grant you an indefinite or twelve year extension of time."  Id.  The letter also notified plaintiff that he had 60 days from the date of his denial letter before he was required to file a civil action, during which time he could obtain representation.  Id.

Plaintiff was thus advised of his right to representation multiple times before the ALJ continued with the administrative hearing.  He was advised of the existence of organizations that may provide him representation at no cost, and was given ample time to obtain counsel, but failed to do so. Moreover, plaintiff had at least a high school education and the hearing transcripts reveal that he understood and was able to answer questions posed by the ALJ.  Although plaintiff was given time by both the ALJ and the appeals council to obtain counsel, he failed to do so, and still has failed to obtain representation.  On these facts, the court finds that plaintiff knowingly and intelligently waived his right to counsel.

As noted, even if plaintiff's waiver was faulty, a flawed waiver of counsel does not require remand unless "the absence of counsel created clear prejudice or unfairness to the claimant."  Sims, 631 F.2d at 27-28; Brock v. Chater, 84 F.3d

726, 729 n. 1 (5th Cir. 1996) (per curium) ("A claimant who does not validly waive his right to counsel must prove that he was prejudiced thereby in order to merit reversal of the ALJ's decision.").

Plaintiff has not indicated how the lack of counsel at the ALJ hearing prejudiced him.  At the hearing, the ALJ inquired into, <u>inter</u> <u>alia</u>, why plaintiff stopped working in 2002, the neuropathy in his feet, the doctors he was seeing and the medication he was taking, and how long he could stand and sit comfortably before experiencing pain.  Tr. at 490-513.  In addition, the ALJ asked plaintiff about medical records that plaintiff indicated were missing from the record, and requested copies of those records from plaintiff's physicians after the hearing.  <u>Id.</u> at 512-514.  The ALJ informed plaintiff that he would send him copies of his medical records so that plaintiff could ensure that none were missing.  <u>Id.</u> at 514, 652.

Finally, the ALJ asked hypotheticals to the vocational expert of the type that a claimant's representative would pose. He asked whether an individual could maintain the jobs of a sorter, garment folder or clerk if he was "off-task due to the intrusion of mental health symptoms and distraction from pain, such that they were not about their employer's business 15 percent of the time of [sic] more" or if "there were absenteeism

24

for any reason at the rate of two days a month or more and that persisted." Id. at 519.  The vocational expert responded "no" to both hypotheticals.  Id.

The evidence does not demonstrate that plaintiff was prejudiced by any failure of having representation at the hearing.  The ALJ inquired into plaintiff's impairments, medical records and medications and posed to the vocational expert questions of the kind that a representative would ask.  The court thus finds that this objection is unpersuasive.[4]

---

[4] When a claimant represents himself pro se, the ALJ additionally has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980).  An ALJ's failure to adequately develop the record warrants remand only where the failure results in prejudice or unfairness to the claimant. Sims, 631 F.2d at 28; Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).  Remand is improper, "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000).  The court finds that any deficiency of the ALJ to fully develop the record did not prejudice plaintiff for the same reasons that the court has articulated that plaintiff was not prejudiced by the failure to have counsel at the ALJ hearing.

### 2. Request that the Court Appoint Plaintiff an Attorney

Plaintiff additionally "prays this Court will appoint an attorney, with experience in disability claims . . . to represent [him] in any further proceedings in this case."  Obj. at 7.  Inasmuch as "counsel will be appointed in civil cases only in exceptional circumstances," the court finds that plaintiff has failed to demonstrate exceptional circumstances that would warrant the appointment of an attorney.  <u>See</u> <u>Richardson v. Henry</u>, 902 F.2d 414 (5th Cir. 1990).  Plaintiff's request for appointment of an attorney is thus denied.

### IV.   <u>Conclusion</u>

Accordingly, having received the PF&R and the defendant's objections, and having reviewed the record <u>de novo</u>, it is ORDERED:

1.   That the PF&R be, and it hereby is, adopted and incorporated herein;

2.   That plaintiff's objections to the PF&R Be, and they hereby are, denied;

3.   That the decision of the Commissioner be, and it hereby is, affirmed;

4.   That this action be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: March 31, 2017

John T. Copenhaver, Jr.
United States District Judge